IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

IN RE:                                              )
                                                    )
STEVEN SCOTT SCHMIDT,            )   Case No. 08-41559
                                                    )
        Debtor.                              )

ORDER DENYING APPROVAL OF REAFFIRMATION AGREEMENTS

Debtor Steven Scott Schmidt seeks Court approval of Reaffirmation Agreements with Wells Fargo Financial Missouri, Inc., and Wells Fargo Financial Bank (collectively, "Wells Fargo") for two debts secured by his residence. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons that follow, the Reaffirmation Agreements will not be approved.

The two debts here are: (1) a loan secured by a first mortgage on his residence in the amount of $205,417.95 with an interest rate of 8.96%; and (2) a line of credit agreement, secured by a second mortgage on his residence, in the amount of $7,145.44, at 18% interest. The Reaffirmation Agreements were set for hearing for Court approval because, although the Debtor's attorney signed off on them, the information contained in Part D of the Agreements showed that there was a presumption of undue hardship. The Debtor's schedules show that he has nearly a $400 deficit in net monthly income after making the two payments to Wells Fargo.

He explains on Part D to the Agreements that by "watching [his] expenses for food, transportation, etc." and using his income tax refund, which he says averages $255 per month, he can make the required payments.

With certain exceptions not relevant here,[1] the Bankruptcy Code grants individual Chapter 7 debtors a discharge of their debts. A debtor may, however, agree to repay (reaffirm) certain debts, and such agreements are enforceable, but only if certain requirements are met.[2]

To be enforceable, a reaffirmation must be made before the granting of a discharge,[3] and the debtor must not have rescinded the agreement any time prior to the discharge or within sixty days after the agreement is filed with the court, whichever occurs later.[4] In addition, the reaffirmation must be the form described in, and contain the disclosures described in, § 524(k).[5] The agreement must also be filed with the court.[6] The Reaffirmation Agreements at issue in this case complied with each of

---

[1] *E.g.,* 11 U.S.C. §§ 523(a) and 727(a).

[2] *See* 4 *Collier on Bankruptcy* ¶ 524.04 at 524-34 ("Subsections (c) and (d) of section 524 prohibit enforcement of the reaffirmation of a discharged debt unless specific requirements have been met. If an agreement to pay a discharged or dischargeable debt does not meet the requirements of subsections (c) and (d), it is without legal effect.").

[3] 11 U.S.C. § 524(c)(1).

[4] 11 U.S.C. § 524(c)(4).

[5] 11 U.S.C. § 524(c)(2) and (k).

[6] 11 U.S.C. § 524(c)(3).

these requirements.

In addition to the foregoing, the Bankruptcy Code provides several additional requirements intended to ensure that debtors do not fall victim to coercive and deceptive actions by creditors[7] and to make sure that debtors understand the consequences of entering into such agreements.

Although not relevant here because the Debtor was represented by counsel in negotiating the Reaffirmation Agreements, the Code requires that, in a case concerning an individual who was *not* represented by an attorney during the course of negotiating a reaffirmation agreement, then, *unless* the debt being reaffirmed is a consumer debt secured by real property, the Court must approve the agreement as –

>   (i)   not imposing an undue hardship on the debtor or a dependent of the debtor and
>
>   (ii)  in the best interest of the debtor.[8]

If the debt being reaffirmed is a consumer debt secured by real property, then this section does not apply.[9] As a result, the Court need not approve the agreement in order for it to be enforceable, *unless*, as discussed below, § 524(m)'s presumption of

---

[7] *See* 4 *Collier on Bankruptcy* ¶ 524.04 at 524-34 (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 162-64 (1977); Report of the Bankruptcy Commission, H.R. Doc. 137, 93d Cong., 1st Sess., Part I, 177).

[8] 11 U.S.C. § 524(c)(6)(A).

[9] 11 U.S.C. § 524(c)(6)(B).

undue hardship applies.

In addition, if a discharge has been granted and if the debtor desires to enter into a reaffirmation agreement, and was *not* represented by an attorney during the course of negotiating such agreement, then –

> (d) . . . the court shall hold a hearing at which the debtor shall appear in person and at such hearing the court shall –
>
>> (1) inform the debtor –
>>
>>> (A) that such an agreement is not required under this title, under nonbankruptcy law, or under any agreement not made in accordance with the provisions of subsection (c) of this section; and
>>>
>>> (B) of the legal effect and consequences of –
>>>
>>>> (i) an agreement of the kind specified in subsection (c) of this section; and
>>>>
>>>> (ii) a default under such an agreement; and
>>
>> (2) determine whether the agreement that the debtor desires to make complies with the requirements of subsection (c)(6) of this section, if the consideration for such agreement is based in whole or in part on a consumer debt that is not secured by real property of the debtor.[10]

Again, if the debt is a consumer debt that is secured by real property, then the Court need not approve the agreement as not imposing an undue hardship on the debtor or

---

[10] 11 U.S.C. § 524(d).

the debtor's dependents under § 524(c)(6) even though the debtor was not represented by counsel during the negotiation, *unless*, as discussed below, § 524(m) applies.

If, as in this case, the debtor *is* represented by an attorney during the course of negotiating the reaffirmation agreement, then the agreement must be accompanied by a declaration or affidavit by the attorney which states that:

(A) such agreement represents a fully informed and voluntary agreement by the debtor;

(B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of –

(i) an agreement of the kind specified in this subsection; and

(ii) any default under such an agreement . . . .[11]

In this case, the Debtor's attorney signed the Certification as to both Reaffirmation Agreements, certifying that they represented fully informed and voluntary agreements by the Debtor, and that the attorney advised the Debtor of the legal effect and consequences of the agreements and any default under them. The attorney also certified that, in his opinion, although a presumption of undue hardship had been established as to the Agreements, the Debtor is able to make the required payments.

---

[11] 11 U.S.C. § 524(c)(3).

Thus, he certified that, in his opinion, the Agreements do not impose an undue hardship on the Debtor or his dependents.

Since the Debtor's attorney signed off on the Agreements in this particular case, the next question is whether they require Court approval in order to be enforceable. On that issue, § 524(m) provides the last requirement:

> (m)(1)  Until 60 days after an agreement of the kind specified in subsection (c) is filed with the court (or such additional period as the court, after notice and a hearing and for cause, orders before the expiration of such period), it shall be presumed that such agreement is an undue hardship on the debtor if the debtor's monthly income less the debtor's monthly expenses as shown on the debtor's completed and signed statement in support of such agreement under subsection (k)(6)(A)[12] is less than the scheduled payments on the reaffirmed debt. *This presumption shall be reviewed by the court.* The presumption may be rebutted in writing by the debtor if the statement includes an explanation that identifies additional sources of funds to make the payments as agreed upon under the terms of such agreement. *If the presumption is not rebutted to the satisfaction of the court, the court may disapprove such agreement.* No agreement shall be disapproved without notice and a hearing to the debtor and creditor, and such hearing shall be concluded before the entry of the debtor's discharge.
>
> (2)  This subsection does not apply to a reaffirmation agreements where the creditor is a credit union . . . .[13]

---

[12] Subsection (k)(6)(A) requires the debtor to sign a statement setting forth the amounts of the debtor's current monthly income and expenses and, if the income less expenses does not leave enough to make the payments under the reaffirmation agreement, then offers the debtor an opportunity to rebut the presumption of undue hardship by explaining how he or she will afford to make the payments.

[13] 11 U.S.C. § 524(m) (emphasis added).

This subsection applies only when there is a presumption of undue hardship – *i.e.,* when the schedules show that the debtor does not have enough income to pay monthly expenses and the debt being reaffirmed. And, unlike §§ 524(c)(6) and (d), this subsection contains no limitation as to debts secured by real estate. It does, however, contain a limitation as to agreements where the creditor is a credit union. Thus, under this provision, a hearing and court approval are required for any reaffirmation agreement in which there is a presumption of undue hardship, regardless of whether the debtor was represented by an attorney in its negotiation or whether the attorney signed off on it, *unless* the creditor is a credit union.

In this case, the Debtor is reaffirming debts secured by real property and his attorney signed off on them. However, Schedules I and J show that his monthly take home pay is $3,410.91, and his current monthly expenses, not including the debts being reaffirmed here, are $1,897.91, leaving $1,512.99 to make the payments. The payments under the Reaffirmation Agreements are $1,912 on the debt secured by the first mortgage and $120 on the line of credit secured by the second mortgage, for a total of $2,032 per month. This leaves the Debtor with a monthly deficit of $519.91 after making these house payments. There is, clearly, a presumption of undue

hardship[14] and, as a result, since Wells Fargo is not a credit union, the Court must approve the Agreements in order for them to be enforceable, even though they involve real estate and the attorney signed off.

Given the size of the combined loans and the amounts of the payments, I cannot find that the Debtor has overcome the presumption of undue hardship. At the hearing on the Agreements, the Debtor stated that he receives a sizeable income tax refund each year and that he intends to use those refunds to make the payments. However, there is no evidence that the Debtor will continue to receive such income tax refunds into the future, or that he will be able to stretch the refunds he does receive to make the payments over the course of each year. It is also significant that the schedules show that the Debtor owes Wells Fargo $17,000 more than the house is worth,[15] which could leave him a substantial deficiency on which he would continue to be personally liable if he defaulted under the Agreements. Finally, the Debtor, who is single with no dependents, has offered no explanation as to why he requires a house with payments totaling more than $2,000 a month. As a result, I find that the Debtor has not overcome the presumption that reaffirming these debts will impose an undue

---

[14] The numbers for expenses on the Debtor's Part Ds do not match those in Schedule J. Further, the payment on the line of credit is not reflected in Schedule J, leaving the Debtor with a significantly greater monthly deficit than shown in his Part Ds.

[15] The schedules list the house with a value of $195,000, and the two debts to Wells Fargo total $212,634.

hardship on him. I will, therefore, not approve them.

The next question is what is the consequence of the decision not to approve these Agreements. Does that mean that Wells Fargo has the authority to foreclose on the mortgages, even if the Debtor remains current in his payments? I previously held, as to motor vehicles, that *ipso facto* provisions in security agreements are not enforceable under Missouri law against a debtor who attempted unsuccessfully to reaffirm the debt.[16] The same is specifically so under Missouri law as to second mortgage loans as well,[17] including the one held by Wells Fargo here.

In any event, the Debtor here has fully complied with any obligations he may have under § 521 by submitting the Reaffirmation Agreements, even though the Court does not approve them. I note that the Eighth Circuit has never ruled on the question of whether a bankruptcy debtor who is current on an installment obligation is required by § 521 to either reaffirm or redeem the debt, or surrender the property. Prior to the enactment of BAPCPA, there was a very clear split of authority among the courts, including the bankruptcy courts in this district,[18] on the question of whether debtors

---

[16] *In re Riggs*, 2006 WL 2990218 (Bankr. W.D. Mo. Oct. 12, 2006). Mo. Rev. Stat. § 408.552 provides in relevant part that an agreement to a credit transaction concerning default is enforceable only to the extent that there is either a payment default or the "lender's prospect of payment, performance, or ability to realize upon the collateral is significantly impaired . . . ."

[17] Mo. Rev. Stat. § 408.551.

[18] *Cf. In re Gerling*, 175 B.R. 295 (Bankr. W.D. Mo. 1994) (holding that there is no fourth option; ride-through not permitted), *with In re Manring*, 129 B.R. 198 (Bankr. W.D. Mo.

who were current with payments on secured debts were limited to the options of surrender, reaffirmation, or redemption found in § 521(a)(2), or whether they could also choose to simply continue making payments and retain possession of the property, known as the "fourth option" or "ride through."[19] If the "fourth option" is available, a debtor who later defaults would expect to have the collateral repossessed or foreclosed, but the bankruptcy discharge would serve to eliminate personal liability for any deficiency claim after the sale of such collateral.

However, BAPCPA's amendments to the Code may have changed the analysis of that issue. Specifically, as part of BAPCPA, Congress added § 362(h) and § 521(a)(6) to the Code, which effectively eliminated the fourth option, but only as to personal property. Many of the pre-BAPCPA decisions on both sides of the issue focused on the meaning of the phrase "if applicable" in § 521(a)(2)(A), in which the debtor is to specify that the property is claimed exempt, that the debtor intends to

---

1991) (holding that ride-through is allowed).

[19] *Cf. In re Price*, 370 F.3d 362, 379 (3d Cir. 2004) (concluding that debtors have the option to retain property while continuing to make regular monthly payments); *In re Parker*, 139 F.3d 668, 673 (9th Cir. 1998) (same); *Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 51 (2d Cir. 1997) (same); *Home Owners Funding Corp. v. Belanger (In re Belanger)*, 962 F.2d 345, 347 (4th Cir. 1992) (same); *Lowry Fed. Credit Union v. West*, 882 F.2d 1543, 1547 (10th Cir. 1989) (same); *with In re Burr*, 160 F.3d 843, 847 (1st Cir. 1998) (concluding that § 521 allowed only three options for retaining property, *i.e*, redemption, reaffirmation and exemption); *In re Johnson*, 89 F.3d 249, 252 (5th Cir. 1996) (same); *Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512, 1516 (11th Cir. 1993) (same); *In re Edwards*, 901 F.2d 1383, 1387 (7th Cir. 1990) (same).

redeem such property, or that the debtor intends to reaffirm the debt.[20] However, since BAPCPA specifies adverse consequences only as to personal property, some courts have held that § 521(a)(2)(A) is only "applicable" if the debt is secured by personal property, and a debtor need not specify one of the three options as to real property.[21] I leave that issue for a case in which I am asked to decide it.

ACCORDINGLY, the Reaffirmation Agreements with Wells Fargo Financial Missouri, Inc., and Wells Fargo Financial Bank are NOT APPROVED.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 11/17/2008

Attorney for Debtor to serve parties not receiving electronic notice

---

[20] *See In re Price*, 370 F.3d at 370 (discussing the interpretations of "if applicable" in § 521(a)(2)).

[21] *See In re Caraballo*, 386 B.R. at 402 (concluding that Congress eliminated the ride through option as to personal property, but that debtors are permitted to take advantage of the ride through option with respect to real property); *In re Waller*, 2008 WL 4367501 at *2 ("Congress curtailed the ride-through option for debts secured by personal property but not with regard to debts secured by real property.").